UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASMINE VINEYARDS, INC., <br><br> Plaintiff, <br><br> v. <br><br> D.R. JOHNSON LUMBER CO., <br><br> Defendant. | Case No. 1:24-cv-00882-CDB <br><br> ORDER DENYING DEFENDANT D.R. JOHNSON LUMBER CO.'S MOTION TO EXCLUDE EVIDENCE AND TESTIMONY <br><br> (Doc. 15) |

Pending before the Court[1] is the motion of Defendant D.R. Johnson Lumber Co. ("Defendant") to exclude evidence and testimony as to the costs to remedy any issues with the subject glulam beams, filed on July 18, 2025. (Doc. 15). On August 1, 2025, Plaintiff Jasmine Vineyards, Inc. ("Plaintiff") filed an opposition to the motion, and on August 11, 2025, Defendant filed a reply. (Docs. 18, 19). Following review of the parties' filings made in connection with the motion, the Court deemed the motion suitable for disposition without hearing and oral argument. (Doc. 21); *see* Local Rule 230(g).

///

///

---

[1] Following all parties' expression of consent to the jurisdiction of a magistrate judge for all further proceedings in this action, including trial and entry of judgment, on October 24, 2024, this action was reassigned to the undersigned pursuant to 28 U.S.C. § 636(c)(1). (Doc. 11).

**I.      Relevant Background**

    **A.      Procedural History and Plaintiff's Factual Allegations**

On February 14, 2024, Plaintiff initiated this action with the filing of a complaint against Defendant and Nationwide Agribusiness Insurance Company[2] in Kern County Superior Court, Case No. BCV-24-100515. (Doc. 1). Plaintiff filed the operative first amended complaint ("FAC") in the state court action on March 14, 2024. *Id.* at 6-8. Defendant removed the action to this Court on July 31, 2024. *See id.* On October 24, 2024, the Court entered the operative scheduling order setting forth case management dates and deadlines, including for discovery, pretrial conference, and trial. (Doc. 12).

In the FAC, Plaintiff asserts a negligence claim against Defendant based on allegations that Defendant "fabricated and/or supplied glulam wood beams in connection with a commercial construction project for Plaintiff" in Kern County, California, to contractors hired by Plaintiff to perform the construction services. (Doc. 1 at 7, ¶ 8). Plaintiff alleges Defendant "assumed and acquired a duty to Plaintiff to use due care in fabricating and supplying [the subject] glulam wood beams. Specifically, Defendant[] had a duty to fabricate and supply glulam wood beams consistent with industry standards and practices and free from material defects and deficiencies, so as to avoid any construction defects and deficiencies and damages to Plaintiff." *Id.* at 7, ¶ 9. Plaintiff alleges that Defendant breached the duty to use due care by "negligently and carelessly fabricating and supplying the glulam beams," resulting in Plaintiff's damages "in an amount presently unknown … to be proved at trial[.]" *Id.* at 7-8, ¶¶ 10, 11.

    **B.      Evidence and Testimony at Issue in Defendant's Motion**

Defendant's motion to exclude evidence and testimony sets forth the evidence it seeks to exclude, including the introduction of Plaintiff's documents and testimony from its president Jon Zaninovich and its non-retained expert Jim McMurtrey relating to Plaintiff's claims for pure economic loss. *See* (Doc. 15 at 5); *see generally* (Doc. 15-1); *id.* at Exhibit ["Ex."] C, Deposition

---

[2] On October 23, 2024, Plaintiff voluntarily dismissed Defendant Nationwide Agribusiness Insurance Company from this action pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). (Doc. 10).

of Person(s) Most Knowledgeable for Plaintiff ("Zaninovich Depo."), 25-33); *id.* at Ex. E, Deposition of James McMurtrey ("McMurtrey Depo."), 118-133). Plaintiff attaches evidence and testimony in support of its opposition to Defendant's motion, including excerpts from the deposition of Mr. Zaninovich, the deposition of James Mahaney, and Mr. Mahaney's expert report. *See generally* (Doc. 18-1); *id.* at Ex. A, Deposition of Plaintiff's Persons Most Knowledgeable ("Pl. Zaninovich Depo."), 4-14; *id.* at Exs. B and C, Deposition of James Mahaney ("Pl. Mahaney Depo."), 16-26 (Ex. B), 28-33 (Ex. C); *id.* at Ex. D, Mahaney Expert Report, 35-42. Plaintiff's opposition also includes the declaration of James McMurtrey in support thereof. *See* (Doc. 18-2, Declaration of James McMurtrey ("McMurtrey Decl.")).

## II.   Governing Authority

Under Federal Rule of Evidence 401, evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence[,] and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401(a)-(b); *see Cooper v. Brown*, 510 F.3d 870, 942 (2007) ("[R]elevance means that the evidence will assist the trier of fact to understand or determine a fact in issue.") (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591-92 (1993)). "Relevant evidence is admissible[.]  Irrelevant evidence is not[.]" Fed. R. Evid. 402. Under Federal Rule of Evidence 104, a court "must decide any preliminary question about whether … evidence is admissible. … When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. The court may admit the proposed evidence on the condition that the proof be introduced later." Fed. R. Evid. 104(a)-(b).

## III.   Parties' Contentions

Defendant moves pursuant to Federal Rules of Evidence 104 and 401 to exclude evidence or testimony from any witness as to any sums paid by Plaintiff associated with the remediation of any issues related to the subject glulam beams. (Doc. 15 at 1). Defendant contends any evidence or testimony as to these sums paid would be irrelevant and must be excluded because Plaintiff has alleged a single negligence claim and none of the sums paid constitute tort damages. *Id.* at 1-2. Defendant argues that Plaintiff's produced evidence and testimony from non-retained expert Jim

1    McMurtrey and its president Jon Zaninovich show that Plaintiff "suffered no tort damage due to
2    any failure of the subject glulam beams" as "[a]ll of the claimed costs stem directly from the
3    removal and replacement of the beams themselves" and therefore Plaintiff's claim is for pure
4    economic loss, "which is not recoverable in a tort action in California. As such, any documents or
5    testimony setting forth these claims are not relevant to [P]laintiff's single cause of action for
6    negligence … [and] must be excluded." *Id.* at 5.
7    　　　Plaintiff argues that "there undoubtedly was no personal injury because [Plaintiff] promptly
8    repaired the facility before the roof collapsed" but that "there is substantial evidence of property
9    damage to property other than the glulam beams[,]" specifically "that the roof was sagging and that
10   joists were damaged as a result of the failure of the beams." (Doc. 18 at 2). Plaintiff contends that
11   the economic loss rule therefore does not limit the damages here. *Id.* Plaintiff argues that because
12   the facts show the defective glulam beams caused damage to property other than the glulam beams
13   themselves, Plaintiff is not precluded from recovery for the repair costs to remove and replace the
14   glulam beams. *Id.* at 6. Plaintiff further contends that Defendant's motion seeking to resolve
15   factual disputes or weigh the evidence here is improper as Plaintiff has shown its evidence and
16   testimony are entirely admissible and creates a factual dispute as to whether other property was
17   damaged by the failed beams and as such, the factual dispute cannot be resolved at this time or
18   through a motion in limine. *Id.* at 7.
19   　　　Defendant argues in reply that Plaintiff correctly discusses the economic loss rule in
20   California but errs in its application as none of the economic losses Plaintiff "seeks to recover in
21   this case are to repair the roof or replace any plywood sheets" but instead are "associated with the
22   removal and replacement of the damaged beams themselves." (Doc. 19 at 2). Defendant argues
23   Plaintiff suffered no tort damage due to any failure of the subject glulam beams and points to the
24   testimony of Mr. McMurtrey where he admits that no efforts were made to repair any damage to
25   the roof or to replace any plywood sheets and that "[no] effort [was made] to identify the precise
26   number of plywood panels that were damaged." *Id.* (citing McMurtrey Decl. at 2). Defendant
27   contends Plaintiff must produce evidence of the reasonable cost of replacing those plywood panels
28   if it argues the plywood panels were damaged. *Id.*

**IV. Discussion**

    **A.  The Economic Loss Rule Does Not Apply**

The parties dispute whether the economic loss rule under California law applies to bar Plaintiff's introduction of evidence and testimony as to any sums paid by Plaintiff related to the subject glulam beams.

        1.  *Governing Authority*

"In California, the "economic loss rule limits a party to a contract 'to recover[ing] in contract for purely economic loss due to disappointed expectations,' rather than in tort, 'unless he can demonstrate harm above and beyond a broken contractual promise.'" *Rattagan v. Uber Technologies, Inc.*, 19 F. 4th 1188, 1190 (9th Cir. 2021) (citing *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (Cal. 2004)); *see NuCal Foods, Inc. v. Quality Egg LLC*, 918 F. Supp. 2d 1023, 1028 (E.D. Cal. Jan. 16, 2013) ("Generally, purely economic losses are not recoverable in tort.") (citing *S.M. Wilson & Co. v. Smith Int'l, Inc.*, 587 F.2d 1363, 1376 (9th Cir. 1978)); *Toyo Tire Holdings of Americas Inc. v. Ameri and Partners, Inc.*, 753 F. Supp. 3d 966, 977 (C.D. Cal. Sept. 11, 2024) ("The economic loss rule generally bars tort claims for contract breaches, thereby limiting contracting parties to contract damages.") (citations omitted). Thus, "[r]ecovery under the doctrine of strict liability is limited solely to physical harm to person or property. Damages available under strict products liability do not include economic loss, which includes damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits[.]" *Robinson Helicopter Co.*, 34 Cal. 4th at 989 (quoting *Jimenez v. Superior Court*, 29 Cal. 4th 473, 482-83 (Cal. 2002)). However, a plaintiff may recover "in strict products liability in tort when a product defect causes damage to 'other property,' that is, property *other than the product itself*." *Id.* (quoting *Jimenez*, 29 Cal. 4th at 482-83) (emphasis in original); *see Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 922 (Cal. 2022) ("In general, there is no recovery in tort for negligently inflicted 'purely economic loss,' meaning financial harm unaccompanied by physical or property damage.") (collecting cases).

In short, while a manufacturer of a defective product may be held strictly liable for "physical injuries (including both personal injury and damage to property other than the product itself),"

1  under the economic loss rule, damages "do not include economic loss, which includes damages for
2  inadequate value, costs of repair and replacement of the defective product or consequent loss of
3  profits—*without any claim of personal injury or damages to other property*." *Jimenez* 29 Cal. 4th
4  at 482 (internal quotations and citation omitted) (emphasis added).

5      2.    *Analysis*

6  In *Jimenez*, the California set forth the analysis of whether the economic loss rule applies:
7  "we must first determine what the product at issue is. Only then do we find out whether the injury
8  is to the product itself (for which recovery is barred by the economic loss rule) or to the property
9  other than the defective product (for which plaintiffs may recover in tort)." *Jimenez*, 29 Cal. 4th at
10 483. Here, the product at issue is the subject glulam beams Defendant fabricated and/or supplied
11 to Plaintiff in connection with Plaintiff's commercial construction project in Kern County. *See*
12 (Doc. 1 at 7, ¶ 8). In the FAC, Plaintiff alleges Defendant's breach of its "duty to use care by
13 negligently and carelessly fabricating and supplying the [subject] glulam beams," "result[ed] in
14 certain construction defects and deficiencies, and damages to Plaintiff." (Doc. 1 at 7-8, ¶¶ 8, 10).
15 These allegations show that Plaintiff seeks to recover in tort for the damage Defendant's glulam
16 beams caused to Plaintiff associated with its commercial construction project, *i.e.*, damage to
17 property that may include property *other than* the glulam beams itself. *Robinson Helicopter Co.*,
18 34 Cal. 4th at 989. Thus, Defendant's argument that all of the costs Plaintiff seeks to recover as
19 damages are associated only with the removal and replacement of the damaged beams themselves
20 (Doc. 19 at 2) does not avail as Plaintiff's allegations encompass damages associated with the
21 construction defects and deficiencies caused by the subject glulam beams.

22 For example, evidence presented by the parties reveals the subject glulam beams may have
23 caused damage to Plaintiff's property other than the beams themselves, including damages
24 requiring replacement of Plaintiff's roof, joists known as "TJIs" which are used to provide support
25 to the roof, and plywood associated with the roof replacement. Plaintiff's non-retained expert, Mr.
26 McMurtrey, a construction contractor who was called to inspect the glulam beams, declared that
27 upon his inspection of Plaintiff's cold storage facility, "roof was sagging" as well as "plywood
28 used in the roof structure was sagging in the area between … two glulam beams, and that joists,

1    known as 'TJIs' that were intended to provide additional support to the roof had 'pulled[]' [and]
2    had been compromised and damaged." *See* (Doc. 18 at 2-3); McMurtrey Decl. ¶¶ 3, 5. Plaintiff's
3    president, Mr. Zaninovich, in response to a question of whether he had any information that the
4    roof to the room was damaged in any way as a result of the beam issue, testified that "[Plaintiff]
5    had to remove the whole roof to replace these beams, or a good portion of it … the damage – [he]
6    observed just sagging as it was being pulled down by the beam collapse." Pl. Zaninovich Depo. at
7    12-13. Though he further testified that the roof was intact and "did not break, [] there was no …
8    leaking, [and] the integrity of the roof was maintained[,]" (*see id.* at 13), this testimony does not
9    contradict that the roof "sagged" and had to be substantially removed and replaced, nor does it
10   make clear that the only damage at issue was to the subject glulam beams itself. Separately, Mr.
11   McMurtrey testified there was damage to the ceiling as "[t]here was some pooling of the plywood
12   and things like that. Not really damage but, you know, just from the pulling down of that beam
13   that pulled on it. It is all just plywood" that "all had to be taken off and the upper plywood." Pl.
14   McMurtrey Depo. at 22. He further testified that the plywood was not saved but "the only thing
15   that was really saved in that section [of the roof] was the TPO" which he explained is a "single-ply
16   poly roofing … a single plywood. It is a poly membrane." *Id.* at 23-24. Though this testimony
17   does not make clear whether the roof was per se damaged as it was replaced, his testimony that he
18   thinks that the "TGIs that are in between the Glulams" were "all replaced" and that "the end of
19   them were compromised" shows Plaintiff may have suffered damages caused by the glulam beams
20   in the replacement of these joists. *Id.* at 25.

21   *Jimenez* is particularly instructive because the case arose in the context of home
22   construction and the applicability of the economic loss rule to a defective component part
23   (windows) allegedly causing damage to the larger product (homes). *See Jimenez*, 29 Cal. 4th at
24   483-84. The *Jimenez* court noted that "'the concept of recoverable physical injury or property
25   damage' had over time 'expanded to include damage to one part of a product caused by another[]
26   defective part.'" *Id.* (citing *Aas v. Super. Ct.* 24 Cal. 4th 627, 641 (Cal. 2000)); *see id.* at 484 ("[In]
27   *Stearman v. Centex Homes*[, 78 Cal. App. 4th 611, 622 (2000),] … the Court of Appeal affirmed a
28   judgment making a builder strictly liable in tort for damages that a defective foundation caused to

the interior and exterior of a home."). Further, the *Jimenez* court distinguished the facts at issue in *Casey v. Overhead Door Corp.*, 74 Cal. App. 4th 112, 119-20 (1999), where plaintiffs failed to prove that allegedly defective windows damaged other property, but noted that "had the plaintiffs been able to support their assertion that the windows had 'caused damage to the drywall and framing[,]" the nonsuit would not have been proper. *Id*. *Jimenez* and the cases cited within illustrate that the economic loss rule does not apply where a plaintiff has shown damage to *property other than* the product at issue itself. *Robinson Helicopter Co.*, 34 Cal. 4th at 989.

In *KB Home v. Super. Ct. of Los Angeles Cnty.*, 112 Cal. App. 4th 1076 (2003), the Court of Appeal articulated the test of what constitutes "other property" for purposes of the economic loss doctrine analysis. *KB Home* instructed that "distinguishing between other property' and the defective product itself in a case involving component-to-component damage requires a determination whether the defective part is a sufficiently discrete element of the larger product that it is not reasonable to expect its failure invariably to damage other portions of the finished product." *Id*. at 1087. *KB Home* set forth the following considerations: (1) does the defective component perform an integral function in the operation of the larger product?; (2) does the component have any independent use to the consumer, that is some use other than as incorporated into the larger product?; (3) how related is the property damage to the inherent nature of the defect in the component?; (4) was the larger integrated product or the component itself the item purchased by the plaintiff? *Id*. at 1086.

Applying the *KB Home* considerations, the subject glulam beams were supplied by Defendant to Plaintiff to be incorporated into the construction of Plaintiff's cold storage facility, which is the "larger product" here. The subject beams are used to support the roof in conjunction with other elements including the TJIs, plywood, and roofing materials. As noted from the record evidence presented, the failure of the glulam beams required Plaintiff to repair damage caused to and/or replace plywood sheets, TJIs, and the TPO roof material. Therefore, it is clear that the defective glulam beams are a sufficiently discrete element of the cold storage facility of it is not unreasonable to expect its failure to damage other portions of the finished product, *i.e.*, the TJIs, plywood sheets, and the roofing material. *See, e.g.*, *Great West Cas. Co. v. Navistar, Inc.*, No. 2:14-

cv-01940-KJM-DAD, 2015 WL 5103678, at *4 (E.D. Cal. Aug. 31, 2015) (collecting cases).[3]  *Cf. Agricola Baja Best, S. De. R.L. de C.V. v. Harris Moran Seed Co.*, 44 F. Supp. 3d 974, 988 (S.D. Cal. 2014) ("Based on the undisputed evidence, there is no damage to 'property other than the product itself' because the tomato seed and the tomato plant are the same product.") (citing *KB Home*, 112 Cal. App. 4th at 1079).

The evidence here refutes Defendant's contention—that none of the economic losses Plaintiff seeks to recover are for damages to other property (*i.e.*, the roof, plywood sheets)—as Mr. McMurtrey's declaration shows that *all* of the plywood panels were removed and discarded to access the damaged glulam beams and TJIs, (McMurtrey Decl. ¶ 7), and Plaintiff has asserted in the FAC that it seeks damages of "certain construction defects and deficiencies" (Doc. 1 at 7-8, ¶ 10). Because Plaintiff's economic losses at issue appear to relate to damages caused to the roof, plywood sheets, and the TJIs, Defendants fail to show that Plaintiff has not suffered any tort damages other than to the subject glulam beams itself. *See Jimenez*, 29 Cal. 4th 484 ("the duty of a product manufacturer to prevent property damage does not necessarily end when the product is incorporated into a larger product.").

At trial, if Plaintiff introduces evidence sufficient to find that it suffered economic loss apart from defective glulam beams, including for repair of property besides the glulam beams (such as the roof, plywood, and/or TJIs), evidence of the amount of damages would be relevant, at least as to the limited issue of damages, because those damages could be recoverable. *See Jimenez*, 29 Cal. 4th at 482. Therefore, Defendant's motion to exclude evidence and testimony as to the costs to remedy any issues with the subject glulam beams pursuant to the economic loss rule fails, and Defendant's motion will be denied.

///

///

---

[3] The parties do not dispute that the product at issue are the subject glulam beams. *See* (Doc. 18 at 6); (Doc. 19 at 2); *Navistar, Inc.*, 2015 WL 5103678 at *5 ("'[I]f the facts required to address these inquiries are uncontested, the court can draw the line between the defective product and other property.'") (citing *Waste Mgmt., Inc. v. Ishikawajima–Harima Heavy Indus.*, Co., No. CIV. S-04-2028 WBS DAD, 2006 WL 2507150, *4 (E.D. Cal. Aug. 29, 2006)).

**V.    Conclusion and Order**

Based on the foregoing, IT IS HEREBY ORDERED Defendant D.R. Johnson Lumber Co.'s motion to exclude evidence and testimony (Doc. 15) is DENIED.

IT IS SO ORDERED.

Dated:   **September 15, 2025**                    _____
                                                                            UNITED STATES MAGISTRATE JUDGE