1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11  JASMINE VINEYARDS, INC.,                    Case No. 1:24-cv-00882-CDB

12                  Plaintiff,                  ORDER GRANTING DEFENDANT'S
                                                MOTION FOR SUMMARY JUDGMENT
13          v.
                                                (Doc. 24)
14  D.R. JOHNSON LUMBER CO.,

15                  Defendant.

16

17          Pending before the Court[1] is the motion of Defendant D.R. Johnson Lumber Co.

18  ("Defendant" or "D.R. Johnson") for summary judgment, filed on September 19, 2025.  (Doc. 24).

19  On October 3, 2025, Plaintiff Jasmine Vineyards, Inc. ("Plaintiff" or "Jasmine") filed an opposition

20  to the motion, and on October 13, 2025, Defendant filed a reply.  (Docs. 25, 26).  The Court has

21  reviewed the parties' filings made in connection with the motion and deems the motion suitable for

22  disposition without hearing and oral argument.  *See* Local Rule 230(g).  For the reasons that follow,

23  Defendant's motion will be granted.

24          ///

25          ///

26  _____

27      [1] Following all parties' expression of consent to the jurisdiction of a magistrate judge for
    all further proceedings in this action, including trial and entry of judgment, on October 24, 2024,
28  this action was reassigned to the undersigned pursuant to 28 U.S.C. § 636(c)(1).  (Doc. 11).

1  **I.**    **Background**

2      **A.**    **Relevant Background**

3      On February 14, 2024, Plaintiff initiated this action with the filing of a complaint against

4  Defendant and Nationwide Agribusiness Insurance Company[2] in Kern County Superior Court,

5  Case No. BCV-24-100515.  (Doc. 1).  Plaintiff filed the operative first amended complaint ("FAC")

6  in the state court action on March 14, 2024.  *Id.* at 6-8.  Defendant removed the action to this Court

7  on July 31, 2024.  *See id.*  On October 24, 2024, the Court entered the operative scheduling order

8  setting forth case management dates and deadlines, including for discovery, pretrial motions,

9  pretrial conference, and trial.  (Doc. 12).

10      In the FAC, Plaintiff asserts a single cause of action against Defendant for negligence under

11  California state law based on allegations that Defendant "fabricated and/or supplied glulam wood

12  beams in connection with a commercial construction project for Plaintiff" in Kern County,

13  California, to contractors hired by Plaintiff to perform the construction services.  (Doc. 1 at 7, ¶ 8).

14  Plaintiff alleges Defendant "assumed and acquired a duty to Plaintiff to use due care in fabricating

15  and supplying [the subject] glulam wood beams.  Specifically, Defendant[] had a duty to fabricate

16  and supply glulam wood beams consistent with industry standards and practices and free from

17  material defects and deficiencies, so as to avoid any construction defects and deficiencies and

18  damages to Plaintiff."  *Id.* at 7, ¶ 9.  Plaintiff alleges that Defendant breached the duty to use due

19  care by "negligently and carelessly fabricating and supplying the glulam beams," resulting in

20  Plaintiff's damages "in an amount presently unknown … to be proved at trial[.]"  *Id.* at 7-8, ¶¶ 10,

21  11

22      On September 15, 2025, the Court denied Defendant's two motions *in limine* in which

23  Defendant sought to exclude certain of Plaintiff's evidence anticipated to be proffered at trial.

24  (Docs. 22, 23).  Relevant here, the Court denied Defendant's motion to exclude the evidence and

25  expert testimony of Plaintiff's non-retained expert witness, Joseph Engel.  (Doc. 23).  The Court

26  found that Engel is qualified to render the challenged opinions—that he observed gaps in the glue

27

28      [2] On October 23, 2024, Plaintiff voluntarily dismissed Defendant Nationwide Agribusiness Insurance Company from this action pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). (Doc. 10).

2

between the glulam beams' lamina and that such gaps resulted in shear stresses that compromised the integrity of the beams (Doc. 23 at 6)—because he is qualified to render such opinions. *Id.* at 6. The Court also found that Engel's opinions are relevant and would assist the jury because Plaintiff sufficiently established it is more likely than not that Engel relied on sufficient facts and data and applied reliable principles and methods in rendering his opinions, and that Engel's testimony bears on and would assist the jury in determining the cause of the glulam beams' failure. *Id.* at 7-8. Regarding Defendant's argument that Engel was not qualified to opine about the applicable standard of care or Defendant's breach of any duty owed—an argument Plaintiff neither challenged nor disputed in its opposition to Defendant's motion—the Court noted: "[w]hether or not expert testimony is necessary in this case on the applicable duty of care and breach thereof, Plaintiff must also prove causation to prevail on its negligence cause of action." *Id.*

**B.    Facts Relevant to Summary Judgment**[3]

The Court draws the following facts from the parties' joint statement of undisputed facts (Doc. 24-1, "JSUF") and from other facts deemed undisputed by Plaintiff (Doc. 25-1, Plaintiff's Response to Defendant's Separate Statement of Undisputed Material Facts) and by Defendant (Doc. 26-1, Defendant's Response and Objections to Plaintiff's Separate Statement of Undisputed Material Facts ISO Motion for Summary Judgment), except where noted. Where facts material to the Court's resolution of Defendant's motion are disputed (*see* Docs. 25-1, 25-2, 26-1), the Court considers whether the dispute is genuine. For genuinely disputed issues of material fact, the Court accepts the version most favorable to Plaintiff, as the non-moving party. *Smith v. City of Hemet*, 394 F.3d 689, 693 (9th Cir. 2005). Where evidentiary objections raised by a party are not expressly identified and discussed herein, they are overruled.

1.    The Subject Glulam Beams' Purchase and Observation of Defects

In 2013, Plaintiff Jasmine Vineyards, Inc. purchased three glulam laminated wood beams[4] from Delano Building Materials, a building supply company that sourced glulam beams from

---

[3] Citation to document pages used herein correspond to the CM/ECF-designated pagination.

[4] The parties do not dispute that generally, in fabricating the glulam beams, the lam stock is graded, the material is finger jointed and is run through a glue spreader. (Doc. 26-1, ¶ 3).

1  Defendant D.R. Johnson, for use in the construction of an addition to Plaintiff's cold storage

2  building for grape operations.  JSUF ¶ 1; (Doc. 26-1, ¶ 4).  The glulam beams were shipped directly

3  to Plaintiff's cold storage facility and arrived by truck.  (Doc. 26-1, ¶ 4).  Plaintiff's cold storage

4  addition was engineered by Engel & Company Engineers and was built by Michael Minner

5  Construction, a general contractor in Delano, California, that did mostly cold storage construction.

6  JSUF ¶¶ 2, 3; (Doc. 26-1, ¶ 5).

7       In 2022, Jasmine employees observed one of the three glulam beams had moved, cracked,

8  and sagged.  JSUF ¶ 4.  Jasmine hired Engel & Company to investigate the beam issues, and Joseph

9  Engel, the owner of Engel & Company, with his associate Paul Anchordoquy, investigated the

10 beams *in situ* in October 2022.  *Id.* ¶ 5.  Mr. Engel wrote a report of his findings, opinions, and

11 conclusions and stated the beam failure was due to one of three possible scenarios—insufficient

12 glue amount, improper penetration of glue, or poor glue quality.  *Id.* ¶ 6.

13                    2.       The Parties' Discovery and Expert Disclosures

14       On April 12, 2024, D.R. Johnson propounded Special Interrogatories on Plaintiff, with

15 Special Interrogatory No. 9 asking Plaintiff to "please state all facts which support YOUR

16 contention D.R. Johnson Lumber Co. was negligent with respect to any D.R. JOHNSON

17 PRODUCT supplied for the PROJECT."  JSUF ¶ 8.  In response to that interrogatory, Plaintiff first

18 objected, stating that "[t]his interrogatory seeks expert opinion as well as the premature disclosure

19 of expert opinion" and Plaintiff then responded that: "Beginning in or about 2022, [Plaintiff]

20 observed roof beams had moved and cracked and were sagging.  Approximately one year after the

21 PROJECT, a building constructed nearby by another owner used glulam beams that were obtained

22 from D.R. Johnson Lumber and the two glulam beams used in that project also began to sag and

23 required placement within a few years."  *Id.* ¶ 9.  D.R. Johnson also sought the identity of all

24 witnesses to support Plaintiff's response.  Plaintiff identified Jonathan Mills and Jon Zaninovich of

25 Jasmine and Gregory Lince.  In responding to all documents in support of Plaintiff's response,

26 Plaintiff again objected, stating that these documents were the subject of expert testimony.  *Id.*

27       On November 8, 2024, Plaintiff served its Rule 26 initial disclosures, noting that its

28 witnesses that had discoverable information included Mr. Mills, Mr. Zaninovich, McMurtrey Lince

1   Construction, Joseph Engel & Co., and Michael Minner Construction. *Id.* ¶ 10.  Plaintiff

2   supplemented its initial disclosures on April 4, 2025, identifying Richard Beyer as a witness to the

3   original purchase of the glulam beams. *Id.* ¶ 11.  On May 5, 2025, the parties disclosed their expert

4   witnesses. *Id.* ¶ 12.

5          Plaintiff disclosed Mr. Engel as a non-retained expert who was expected to testify on

6   various topics, including "that the glue used in the glulam beams failed, causing joint separation

7   and resulting in the failure of the beams." *Id.*  Mr. Engel testified at deposition that he had no

8   information on D.R. Johnson's processes or quality control procedures, that he did not know how

9   many beams D.R. Johnson sells as he did not perform a survey of D.R. Johnson's work and that he

10  was "not interested in D.R. Johnson's production levels[.]"[5]  *Id.* ¶¶ 13(a)-(c); *see* (Doc. 24-3,

11  Exhibit J, Deposition of Joseph C. Engel ("Engel Depo.") at 122-23, 125-26).  As to D.R. Johnson's

12  practices in fabricating the beams, Mr. Engel testified that, "[a]ssuming [D.R. Johnson] fabricated

13  the beams[,]" he is "going to be critical of the way [the three beams at issue] were glued because

14  [he] think[s] we have a glue joint failure" and that he "think[s] there is strong evidence to that

15  effect." (Doc. 25-1, ¶ 2); *see* Engel Depo. at 135-36.  In response to a question about how D.R.

16  Johnson should have glued the beams properly, Mr. Engel testified that he is "not an expert in glue.

17  [He] just started studying it" and "may study glue some more and come up with an opinion" and

18  that he "do[esn't] have one now."[6]  *Id.*  In response to a question as to whether Mr. Engel has "an

19  opinion on a more probable than not basis" as to which of three possible events—"not enough glue,

20  improper penetration of the joint to be glued, or poor glue quality"—caused the glue joint failure,

---

21          [5] Plaintiff does not dispute this testimony but notes "the number of beams [Defendant] sells

22  and its production levels is not material in that it has no bearing on whether the glue on the two
    glulam beams in question failed." (Doc. 25-1, ¶ 1).

23

24          [6] While Plaintiff does not dispute that Mr. Engel testified he is not a "glue expert," that he

25  does not have an opinion on how the beams should have been glued, and that he could not state
    what type of glue could or should have been used or how or why there were voids or gaps in the

26  glue, Plaintiff disputes the implication that Mr. Engel had no opinion as to the reason for the glue
    joint failure, arguing that "there were obvious gaps in the glue" and showing that Mr. Engel

27  declared that "it is more probable than not that the joints between the lamina were not completely
    glued, resulting in elevated and uneven shear stresses, causing tears along the horizontal glue

28  joints." (Doc. 25-1, ¶¶ 2, 3) (citing Doc. 25-3 at 50-51, Declaration of Joseph C. Engel ("Engel
    Decl.") ¶¶ 14, 16); *see* Engel Depo. at 129-32, 135-36.

1    Mr. Engel denied having any opinion and stated "[i]t could be one" or "all three" reasons, that he

2    would "talk to someone who is an expert in gluing … [g]lulam beams who is a disinterested third

3    party[,]" and that he is "not an expert on gluing wood" as "[i]t is outside [his] area."[7]  (Doc. 25-1,

4    ¶ 4).

5        Plaintiff also disclosed non-retained expert James McMurtrey, but his testimony was

6    limited "to work reasonably required and performed to repair and prevent any further damage to or

7    collapse of the structure, the cost incurred to repair the structure, and whether such cost was

8    reasonable[,] and the materials required for the repair," and has not reached any other opinions in

9    the case.  JSUF ¶ 14.  Plaintiff also disclosed as a non-retained expert Michael Minner, the original

10   contractor for the cold storage addition, but like Mr. McMurtrey, Mr. Minner's testimony was

11   limited to opining on the work he did and not on D.R. Johnson's conduct.  *Id.* ¶ 15.

12              3.    D.R. Johnson and the APA

13       D.R. Johnson is a member of the APA Wood Association, and the APA is D.R. Johnson's

14   certifying body.  (Doc. 26-1, ¶ 1); (Doc. 25-3 at 3 ¶ 10); *see id.*, Exhibit 1, Deposition of Trent

15   Middlebrooks ("Def. Rule 30(b)(6) Depo.") at 6.  D.R. Johnson's quality control manual is based

16   upon the APA Standards and updated when there are changes to the American National Standards

17   Institute ("ANSI") standard that the APA adopts or when the APA has instituted other changes to

18   its own standards.  (Doc. 26-1 ¶ 2); Def. Rule 30(b)(6) Depo. at 6, 13-14.

19       ANSI/APA standards from 2012 required that "the adhesive, whether mixed prior to

20   application or applied separately shall be applied uniformly to wood surfaces in an amount equal

21   to meet the performance requirements of this Standard."[8]  (Doc. 26-1 ¶ 20) (citing Doc. 25-3,

22

23       [7] Plaintiff appears to dispute the implication that Mr. Engel does not have an opinion as to
     the cause of the beam issues for the same reasons articulated above, *supra* n.6.  (Doc. 25-1, ¶ 4)
24   (citing Engel Decl. ¶¶ 14, 16).

25       [8] Defendant objects to this evidence on relevance, foundation, and hearsay grounds.  (Doc.
     26-1 ¶ 20).  "[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or
26   argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary
     judgment standard itself[.] … A court can award summary judgment only when there is no genuine
27   dispute of *material* fact. It cannot rely on irrelevant facts, and thus relevance objections are
     redundant." *Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006)
28   (emphasis original); accord *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 665 (9th Cir. 2021).

1    Exhibit 9, ANSI/APA A190.1.2012 Standard for Wood Products—Structural Glue Laminated

2    Timber, Approved Jan. 23, 2013 ("ANSI A190.1") ¶ 9.1); *see infra* Section.III; (Doc. 25-4)

3    (Plaintiff's Unopposed Request for Judicial Notice ISO Opposition).

4              4.    Glulam Beams at Hronis Brothers, Inc.'s Cold Storage Facility

5         In or about 2017, Michael Minner Construction also constructed a cold storage facility for

6    Hronis Brothers, Inc. ("Hronis"), another grower in Delano, and the glulam beams for that facility

7    were sourced from D.R. Johnson.   (Doc. 26-1 ¶ 6) (citing Doc. 25-3, Exhibit 2, Deposition of

8    Michael Alan Minner ("Minner Depo.") at 24-25).   One of the glulam beams at the Hronis cold

9    storage facility delaminated, *i.e.*, separated at the face of the glue joint, even before the roof was

10   placed.   *Id.*   D.R. Johnson replaced the Hronis delaminated glulam beams without charge and

11   Michael Minner Construction performed the labor free of charge to Hronis.   *Id.* ¶ 7.

12             5.    Mr. Engel's Inspection of the Subject Glulam Beams and Opinions Thereto

13        Following Plaintiff's discovery of the failed glulam beams, Plaintiff called Mr. Engel to

14   inspect the beams at its cold storage facility.   In the fall of 2022, Mr. Engel observed that the beams

15   had delaminated to the point that he could see daylight between the lamina and concluded that the

16   beams were defective because there were glue gaps in the face joints.[9]   (Doc. 26-1, ¶ 8) (citing Doc.

---

Accordingly, because Defendant's objections to evidence on relevance grounds (*i.e.*, Doc. 26-1 ¶ 6) are duplicative and improper on a motion for summary judgment, they are overruled. *E.g.*, *U.S. E.E.O.C. v. Placer ARC*, 114 F. Supp. 3d 1048, 1052 (E.D. Cal. 2015); *Yellowcake, Inc. v. Hyphy Music, Inc.*, No. 1:20-CV-00988-JLT-BAM, 2025 WL 2196382, at *6 (E.D. Cal. Aug. 1, 2025); *F.D.I.C. v. Varrasso*, No. CIV. 2:11–2628 WBS CKD, 2013 WL 5493402, at *3 (E.D. Cal. Oct. 1, 2013).

Separately, unless noted herein, the parties' objections based on hearsay (*i.e.*, Doc. 26-1 ¶ 7) are overruled because the Court has determined that, even if the subject evidence constitutes hearsay, it is of a type that could be presented in admissible form at trial.  *See Sandoval*, 985 F.3d at 666; *e.g.*, *Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003) ("Because the diary's contents could be presented in an admissible form at trial, we may consider the diary's contents in the Bank's summary judgment motion.").  Additionally, as discussed *infra* Section.III, because Defendant does not oppose Plaintiff's request for judicial notice of the ANSI A190.1 document and the document is a public record of a national standard approved by an administrative body, the Court finds it appropriate to judicially notice the document.  *See infra* Section.III.

[9] Defendant objects to the introduction to this fact as to its foundation under Federal Rules of Evidence 702 and 703 and as an improper expert opinion under Federal Rule of Civil Procedure 26.  (Doc. 26-1, ¶ 8).  Because the Court denied Defendant's motion to exclude the expert testimony

25-3, Exhibit 3, Deposition of Joseph C. Engel ("Pl.'s Engel Depo.") at 34-38 & Engel Decl. ¶ 13). Mr. Engel noted that the delaminations in the subject beams at Plaintiff's facility resembled splits he previously observed from photographs of delaminated beams at the Hronis Brothers's cold storage facility. *Id.* ¶ 9 (citing Pl.'s Engel Depo. at 38-45). Mr. Engel was also the engineer on the Hronis facility and was provided photographs of that facility's delaminated glulam beams, of which he observed long horizontal cracks in the beam lamina and cracks on the ends of the lamina, indicating to him shear failure along a glue joint in the beam. *Id.* ¶ 10 (citing Pl.'s Engel Depo. at 38-45). Mr. Engel opined that the glue gaps in the face joints more probably than not caused the individual planks to shift under shear stress, that the shifting of one plank sliding or moving in one direction while the attached plank slides or moves in the opposition direction caused the lamina to separate, and once the separation occurred, the lamina were not strong enough to withstand the roof load. *Id.* ¶ 11 (citing Engel Decl. ¶¶ 14, 16).

### 6.    Defendant's Production of APA Reports

In response to requests for production of documents, Defendant produced a report from an APA inspection of its facilities from May 2010 in which the report notes "shear test values of DF [Douglas fir] beams did not meet required criteria, due to excessive amounts of flat grain present on the glued faces of the laminates."[10] *Id.* ¶ 12 (citing Doc. 25-3, Exhibit 5, May 2010 APA Inspection Report ("May 2010 APA Report")). Defendant also produced an audit report from August 2017 which shows that the APA reviewed a record of an incident of a nonconforming product due to "open gluelines" caused by uneven wear on crowder rolls that caused excessive pressure on the outer edge of laminations. *Id.* ¶ 13 (citing Doc. 25-3, Exhibit 6, August 2017 APA Audit Report ("August 2017 APA Audit Report")).

---

of Mr. Engel, finding that he is qualified to render the challenged opinion and that his opinions are relevant and would assist the jury given that Defendant does not show that Mr. Engel relied on improper data or applied unreliable principles and methods in rendering his opinions, Defendant's challenge based on foundation and improper expert opinion is overruled. *See* (Doc. 23 at 6-8); *Placer ARC*, 114 F. Supp 3d at 1052.

[10] Although Defendant correctly notes the contents of the APA report are hearsay (Doc. 26-1 ¶ 12), because the report is signed, the Court presumes its author could testify at trial and, thus, the report's contents may be considered on summary judgment. *Sandoval*, 985 F.3d at 666; *Fraser*, 342 F.3d at 1037.

7.    D.R. Johnson's Retained Structural Engineer James Mahaney

D.R. Johnson retained James Mahaney, a structural engineer, who confirmed that horizontal shear stresses are low in the area of the subject beams that failed at Plaintiff's facility and that, theoretically, the beam should not have failed due to high stresses.  *Id.* ¶ 14 (citing Doc. 25-3, Exhibit 7, James Mahaney Report ("Mahaney Report") ¶ 25).  Mr. Mahaney took core samples of one failed beam including one sample from a failed face joint.  *Id.* ¶ 15 (citing Mahaney Report ¶¶ 32-36).  Mr. Mahaney concluded that, from the samples, there were gaps in the glue lines between the face joints, noting "there are areas of notably less coverage compared to other areas."  *Id.* ¶ 16 (citing Mahaney Report ¶ 38(d)).  The laboratory that placed the core samples under a microscope found that there was wood present on the glued face of the laminate.  *Id.* ¶ 17 (citing Mahaney Report at 15) (WJE Laboratory Testing Report).  Mr. Mahaney concluded that delaminations occurred "some time ago," although there is no scientific test to specifically identify the delamination date.  *Id.* ¶ 18 (citing Doc. 25-3, Exhibit 8, Deposition of James Mahaney ("Mahaney Depo.") at 96-97).  Mr. Mahaney testified that the wood fibers found in the glue lines have been in the glue lines since fabrication.  *Id.* ¶ 19 (citing Mahaney Depo. at 96-97).

## II.    Governing Authority

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011).  An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).

On summary judgment, each party's position must be supported by: (1) citing to particular portions of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  *See* Fed. R. Civ. P. 56(c)(1).  The court may consider other materials in the record

1    not cited to by the parties, but it is not required to do so.  *See* Fed. R. Civ. P. 56(c)(3); *Carmen v.*

2    *San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).  Furthermore, "[a]t

3    summary judgment, a party does not necessarily have to produce evidence in a form that would be

4    admissible at trial." *Nevada Dep't of Corr v. Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011) (citations

5    and internal quotations omitted).  The focus is on the admissibility of the evidence's contents rather

6    than its form.  *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 846 (9th Cir. 2004).

7         "The moving party initially bears the burden of proving the absence of a genuine issue of

8    material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex*

9    *Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  To meet its burden, "the moving party must either

10   produce evidence negating an essential element of the nonmoving party's claim or defense or show

11   that the nonmoving party does not have enough evidence of an essential element to carry its ultimate

12   burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d

13   1099, 1102 (9th Cir. 2000); *see Soremekun v. Thrifty Payless, Inc*., 509 F.3d 978, 984 (9th Cir.

14   2007).  ("On an issue as to which the nonmoving party will have the burden of proof, [ ] the movant

15   can prevail merely by pointing out that there is an absence of evidence to support the nonmoving

16   party's case.") (citing *Celotex Corp.*, 477 U.S. at 323).  If the moving party meets this initial burden,

17   the burden shifts to the non-moving party "to designate specific facts demonstrating the existence

18   of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387 (citing *Celotex Corp.*,

19   477 U.S. at 323).  The non-moving party must "show more than the mere existence of a scintilla of

20   evidence." *Id.* (citing *Anderson*, 477 U.S. at 252).  However, the non-moving party is not required

21   to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual

22   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

23   trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)

24   (quotation and citation omitted).

25        The court must apply standards consistent with Rule 56 to determine whether the moving

26   party has demonstrated the absence of any genuine issue of material fact and that judgment is

27   appropriate as a matter of law.  *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).

28   "[A] court ruling on a motion for summary judgment may not engage in credibility determinations

1    or the weighing of evidence." *Manley v. Rowley,* 847 F.3d 705, 711 (9th Cir. 2017) (citation

2    omitted).  The evidence must be viewed "in the light most favorable to the nonmoving party" and

3    "all justifiable inferences" must be drawn in favor of the nonmoving party.  *Orr v. Bank of Am., NT*

4    *& SA*, 285 F.3d 764, 772 (9th Cir. 2002); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir.

5    2000).

6    **III.    Plaintiff's Unopposed Request for Judicial Notice ISO Opposition**

7            In opposition to Defendant's motion for summary judgment, Plaintiff requests the Court

8    take judicial notice of the document entitled "ANSI/APA A190-1-2012," attached to the request as

9    Exhibit A.  (Doc. 25-4 at 1); *see id.* at 2-43 (Exhibit A, American National Standard Institute

10   ("ANSI") A190.1.2012 Standard for Wood Products—Structural Glue Laminated Timber,

11   Approved Jan. 23, 2013 (hereinafter "Pl.'s Ex. A")).    Although Defendant objects to the

12   introduction of certain facts contained in Plaintiff's request for judicial notice, *see* (Doc. 26-1 at ¶

13   20), which the Court has addressed and overruled, *see supra*, Defendant otherwise does not oppose

14   or address Plaintiff's request for judicial notice.  *See* (Doc. 26).

15           Given Defendant does not object to the request for judicial notice, and because the Court

16   finds that Plaintiff's proffered Exhibit A for judicial notice is a public record as a national standard

17   developed and approved by an administrative body, the Court finds it appropriate to judicially

18   notice the existence and authenticity of the document.  *See* Fed. R. Evid 201(c); *Khoja v. Orexigen*

19   *Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018); *see also Del Puerto Water Dist. v. U.S.*

20   *Bureau of Reclamation*, 271 F. Supp. 2d 1224, 1234 (E.D. Cal. 2003) ("Judicial Notice is taken of

21   the existence and authenticity of the public and quasi public documents listed. To the extent their

22   contents are in dispute, such matters of controversy are not appropriate subjects for judicial

23   notice").

24   **IV.    Parties' Contentions**

25           Defendant moves for summary judgment, asserting there is no genuine dispute as to any

26   material fact and that it is entitled to judgment as a matter of law because Plaintiff has failed to

27   produce any evidence to support an essential element of its negligence claim.  (Doc. 24 at 1-2).

28   Defendant contends that Plaintiff fails to produce any evidence, "through discovery or otherwise,

1    to establish [that Defendant] failed to act as a reasonably prudent manufacturer would have" and

2    that Defendant breached any duty it owed to Plaintiff. *Id.* at 2, 8.  Defendant asserts that Plaintiff

3    failed to disclose any witnesses or documents to establish any breach, pointing to Plaintiff's

4    discovery responses, deposition testimony, and expert reports as "devoid of any specific facts or

5    opinions demonstrating that [Defendant's] conduct in manufacturing the subject glulam beams was

6    unreasonable." *Id.* at 7.  Defendant argues Plaintiff's non-retained expert Mr. Engel cannot and

7    will not provide any evidence or testimony to that effect, noting that "the closest Mr. Engel comes

8    to offering [evidence of Defendant's breach] is to say that the beams were not glued properly" but

9    that Mr. Engel admits "he does not know why." *Id.* at 8.  Defendant continues that Mr. McMurtrey

10   and Mr. Minner are not qualified or prepared to opine as to what Defendant did or failed to do that

11   lead to the glulam failure. *Id.* at 9.  As to Plaintiff's apparent attempt to have the Court infer

12   Defendant's negligence from the failure of the beams themselves under a common law *res ipsa*

13   *loquitur* theory, Defendant argues that, even assuming Plaintiff had evidence to support that the

14   accident is of a kind which ordinarily does not occur in the absence of negligence, and that the

15   accident was not due to any voluntary action or contribution on part of Plaintiff, the beams were

16   not in the exclusive control of Defendant as the alleged defective beams left Defendant's control

17   "sometime in 2012[,]" were installed by Michael Minner Construction, and have "been in use for

18   nine years in [Plaintiff's] facility prior to the discovery of any issue" such that *res ipsa loquitur* is

19   not applicable. *Id.* at 9-10.

20        Plaintiff contends that Defendant's motion, premised on a purported lack of evidence of any

21   breach or Defendant's negligence in manufacturing the beams, should be denied for three reasons.

22   (Doc. 25 at 4).  First, Plaintiff argues there is evidence that "Defendant's beams in other instances

23   failed inspection because excessive wood grain in the face glue joints resulted in shear stresses, and

24   [here], there is evidence of wood fibers found in the face glue joints" such that Defendant

25   manufactured the beams negligently. *Id.* at 5, 8-9.  Plaintiff argues that it is undisputed that there

26   were gaps in the glue joint application on the subject beams "which were visible to the naked eye"

27   as to both the face laminations and the finger joint bonds. *Id.* at 9.  Plaintiff points to Mr. Engel's

28   testimony opining that "increased shear stresses on the beams weakened or compromised the

integrity of the beams to the point that they could not withstand the loads the beams were intended to support[.]"  *Id.* at 5, 9.  Plaintiff notes that Defendant, as "a member of the APA" with "its manufacturing processes [and specifications and quality control] … dictated by APA standards[,]" had products which "suffered from defective glue lines that resulted in increased shear stresses" between 2010 and 2017 and Mr. Engel observed similarities in delaminations of beams used at the Hronis Brothers's storage facility and Plaintiff's, respectively, such that the "failure to conform to APA/ANSI standards is the breach" that caused Plaintiff's damage.  *Id.* at 9-10.  Second, Plaintiff contends that even if it cannot "precisely identify what went wrong in the manufacturing process, *res ipsa loquitur* applies because the failure of the glulam beams without some other catastrophic event or engineering mistakes ordinarily would not happen in the absence of negligence[.]"  *Id.* at 5.  Third, Plaintiff asserts that even if it cannot prove a cause of action for ordinary negligence, it has alleged in its FAC "enough facts" to state a claim for strict product liability and that Defendant would not be unduly prejudiced if this case were allowed to proceed under the theory of strict product liability.  *Id.*

In its reply brief, Defendant contends that Plaintiff fails to offer any admissible evidence that Defendant failed to take reasonable precautions to design or manufacture a safe product or otherwise act as a reasonable prudent manufacturer would under the circumstances.  (Doc. 26 at 1-2).  Defendant argues Plaintiff points to no evidence that Defendant's conduct with respect to the subject beams "fell below any standard of care[] or was otherwise unreasonable" to provide a factual basis from which a jury could determine Defendant was negligent.  *Id.* at 2.  Defendant asserts that Plaintiff must show that the presence of gaps in the glue joint application were due to Defendants' negligence, and that here, Plaintiff's reliance on two APA audit reports of Defendant— one report "which precedes the assumed date[11] of manufacture [of the beams] by three years" and the other report "that follows the date [of purchase] by four years"—is improper as inadmissible hearsay and without any foundational witness attesting to the information contained therein to properly establish Defendant's negligence in the manufacture of the subject beams.  *Id.*  Defendant

---

[11] Defendant notes that it is undisputed that the subject beams were purchased in 2013 but that "[t]he date of manufacture [of the beams] is assumed to be around the same time[] but is unknown."  (Doc. 26 at 2 fn. 1) (citing JSUF ¶ 1).

1 further contends that Plaintiff's reliance on the failure of two of Defendant's glulam beams at the

2 Hronis Brothers facility and Mr. Engel's assessment of that incident as well as the 2017 audit report

3 is immaterial, noting that "there is no evidence [that] Mr. Engel … personally investigated the

4 Hronis Brother's beams, other than looking at photographs" and any testimony he may give as to

5 the similarity of the two situations "is speculative." *Id.* at 4.

6 **V.    Discussion**

7        The crux of Defendant's motion is that Plaintiff has failed to present any disputed issue of

8 material fact that Defendant breached any duty owed to Plaintiff as to the manufacture of the subject

9 glulam beams.  (Doc. 24 at 7).  Accordingly, as set forth below, the Court addresses Plaintiff's

10 negligence claim before considering the parties' arguments as to the doctrine of *res ipsa loquitur*

11 and Plaintiff's request to proceed in the alternative under a strict products liability theory and

12 request for leave to amend to add that claim.

13       **A.    Negligence**

14             1.    Governing Authority

15       To prevail on a cause of action for negligence, "a plaintiff must show that the defendant

16 owed a legal duty, the defendant breached that duty[,] and the breach proximately caused injury to

17 the plaintiff." *Monroe v. Zimmer U.S. Inc.*, 766 F. Supp. 2d 1012, 1028 (E.D. Cal. 2011) (citing

18 *Garcia v. W & W Community Development, Inc.*, 186 Cal. App. 4th 1038, 1044 (2010)); *see Zetz*

19 *v. Boston Scientific Corp.*, 644 F. Supp. 3d 684, 718 (E.D. Cal. 2022) (citing *Howard v. Omni*

20 *Hotels Mgmt. Corp.*, 203 Cal. App. 4th 403, 428 (2012)).

21       "The existence of a duty of care owed by a defendant to a plaintiff is a 'prerequisite' to

22 establishing a claim for negligence." *Mejia v. JPMorgan Chase Bank, N.A.*, No. 21-cv-01351-

23 HSG, 2021 WL 6498762, at *1 (N.D. Cal. Sept. 8, 2021)  (citing *Nymark v. Heart Fed. Sav. &*

24 *Loan Ass'n*, 231 Cal. App. 3d 1089, 1095 (1991)); *Monroe*, 766 F. Supp. 2d at 1033.  "As to the

25 standard of care for negligence, a [designer/manufacturer] is negligent if [it] fails to use the amount

26 of care in [designing] the product that a reasonably careful [designer/manufacturer] would use in

27 similar circumstances to avoid exposing others to a foreseeable risk of harm." *Zetz*, 644 F. Supp.

28 3d at 718 (citation and quotations omitted) (alteration in original).

Where "the appropriate standard of care for a … manufacturer is beyond the 'common knowledge of [laypersons,]' … it [is] incumbent … to present at least some expert testimony regarding [the] customary standard of care." *Torres v. Taser Intern., Inc.*, 277 Fed. Appx. 684, 687 (9th Cir. 2005) (citing *Miller v. L.A. Cnty. Flood Control Dist.*, 8 Cal. 3d 689, 700, 702 (1973)) (requiring expert testimony in negligence case to establish how a reasonably prudent builder would have acted in a particular situation); *see U.S. Fid. & Guar. Co. v. Lee Invs. LLC*, 641 F.3d 1126, 1139 (9th Cir. 2011) (noting that California requires expert testimony on the standard of care unless the conduct required by the particular circumstances is within the common knowledge of the layman) (citing *Flowers v. Torrance Memorial Hosp. Med. Ctr.*, 8 Cal. 4th 992, 1001 (1994)); *Raven's Cove Townhomes, Inc. v. Knuppe Development Co.*, 114 Cal. App. 3d 783, 797 (1981) (noting, under *Miller*, that the requirement to proffer expert testimony, if any, depends on "whether the subject of inquiry is one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness or whether … the matter is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact.") (internal quotations omitted).

In considering "negligence and due care determinations, a manufacturer's '[c]ompliance with regulations, directives or trade custom does not necessarily eliminate negligence but instead simply constitutes evidence for jury consideration with other facts and circumstances.'" *Howard*, 203 Cal. App. 4th at 421 (citations omitted).

2.    Analysis

Plaintiff accepts that duty and breach are essential elements of its negligence claim and acknowledges Defendant's argument that Plaintiff fails to present any triable issues of fact that Defendant breached its duty of care (*see* Doc. 25 at 9).  In opposition to this argument, Plaintiff notes it is undisputed that gaps were observed in the glue joint applications of the allegedly defective beams and that, under applicable APA/ANSI standards, such gaps are "nonconforming." *Id*. at 9-10.  Thus, Plaintiff argues, Defendant's "failure to conform to APA/ANSI standards is the breach." *Id*. at 10.

The Court is unable to find that Plaintiff has adduced sufficient evidence to create a triable

1    issue of fact that Defendant breached its duty of care.  Even accepting that gaps were observed in

2    the allegedly defective beams after their failure and that such gaps are "nonconforming" under an

3    applicable industry standard, the Court has no evidence before it that such nonconformance

4    suggests that Defendant's conduct in manufacturing the beams here falls below the standard of a

5    reasonably careful beam fabricator under the same circumstances.  Specifically, Plaintiff's evidence

6    does not connect the alleged *cause* of the beam failure (gaps in lamination resulting in shear

7    stresses) to conduct by Defendant that falls below the applicable standard of care.

8        California courts have set forth the test for determining whether expert testimony is

9    necessary to establish the applicable standard of care.  For instance, in *Miller*, the California

10    Supreme Court upheld the lower court's determination that expert testimony was required to

11    establish the standard of care applicable to a builder in constructing residential homes.  *Miller*, 8

12    Cal. 3d at 701-03.  The *Miller* Court explained that "[b]uilding homes is a complicated activity"

13    and "[t]he average layman has neither training nor experience in the construction industry and

14    ordinarily cannot determine whether a particular building has been built with the requisite skill and

15    in accordance with the standards prescribed by law or prevailing in the industry."  *Id.* (footnote

16    omitted).  Because the plaintiffs there failed to present any competent expert opinion evidence on

17    the issue of the relevant standard of care, the appellate court held that the trial court's "nonsuit was

18    a proper as to the theory of negligence."  *Id.* at 703.

19        Distinguishing *Miller*, the court in *Raven's Cove Townhomes, Inc.*, found that the question

20    in that case—whether an "irrigation system, [] landscaping, and [] paint and exterior trim failed to

21    fulfill their respective purposes"—involved defects "of a nature that could be ascertained by a lay

22    jury without the aid of experts."  114 Cal. App. 3d at 796-97.  Whereas the issues requiring expert

23    testimony in *Miller* were "complex," defects in irrigation systems, landscaping, and paint and

24    exterior trim are "of such common knowledge that men of ordinary education could easily

25    recognize them."  *Id.* at 797.

26        Applying these principles, in *Torres*, the Ninth Circuit held that the appropriate standard of

27    care for a weapon manufacturer in designing a holster "is beyond the 'common knowledge of

28    [laypersons]' and, thus, it was incumbent upon [the plaintiff] to present at least *some* expert

16

testimony regarding this customary standard of care.  277 Fed. Appx. at 687 (quoting *Miller*, 8 Cal.3d at 700, 702) (emphasis in original).

While it may be the case that defects arising in the context of sprinklers and paint are within the common knowledge of a layperson (*see Raven's Cove Townhomes, Inc., supra*) given it is not unusual for homeowners to paint and care for their own landscaping, the same cannot be said for the fabrication of glulam beams.  Mr. Engel's observations and expert opinions that the beams at issue had a glue joint failure with glue gaps in the face joints and were severely delaminated unquestionably is relevant to the issue of causation.  However, Plaintiff does not argue that Mr. Engel is competent to testify about the standard of care applicable to Defendant as a fabricator and/or supplier of glulam beams.  Thus, Plaintiff's bare reliance on a relevant APA guideline characterizing beam gaps as "nonconforming" without competent expert testimony contextualizing what "nonconforming" means and what (if anything) Defendant did (or failed to do) that sets its conduct below that of a reasonably careful beam manufacturer does not present a triable issue of fact that Defendant breached its duty of care.

In responding to Defendant's arguments on duty and breach, Plaintiff separately notes that in or about May 2010, the APA inspected Defendant's facilities and found certain beams did not meet required shear test values due to excessive amounts of flat grain present in the glued faces of the beams' laminates.  Plaintiff also points out that Defendant's August 2017 audit report documented APA's review of "an incident of a nonconforming product" involving "open gluelines."  In that same year, a beam Defendant provided for the Hronis Brothers cold storage unit failed and Plaintiff's expert, Mr. Engel, observed that photos of that beam depicted similarities to the delamination of the beams at issue here.  (Doc. 25 at 9-10).

Although Plaintiff does not develop a specific argument about how these facts inform the analysis of Defendant's alleged breach of its duty of care, it states summarily that the facts are "sufficient to permit a jury to conclude that between 2010 and 2017, Defendant's product suffered from defective glue lines that resulted in increased shear stresses.  This is precisely the defect that Jasmine alleges, with resulting shear stresses that compromised the beams."  (Doc. 25 at 10).  Even taking these facts in the light most favorable to Plaintiff, without expert testimony, Plaintiff cannot

1   identify a disputed issue of material fact going to either the duty of care applicable to a reasonably

2   careful beam manufacturer or to the conduct of Defendant that allegedly fell below this standard.

3   *See, e.g.*, *E.R.E. Ventures, LLC v. David Evans and Associates*, No. 22-55433, 2023 WL 4261353,

4   at *1 (9th Cir. June 29, 2023) ("On the merits, plaintiffs' tort claims against DEA fail, because

5   plaintiffs did not introduce expert testimony as to the applicable standard of care.") (citing *U.S.*

6   *Fid. & Guar. Co.*, 641 F.3d at 1138)); *Torres*, 277 Fed. Appx. at 687; *Kamerik v. Depuy*

7   *Orthopaedics, Inc.*, No. CV 11-06920 MMM (MANx), 2013 WL 12322041, at *5 (C.D. Cal. Jan.

8   28, 2013) ("As Kamerik has failed to adduce any evidence, expert or otherwise, regarding the

9   appropriate standard of care for medical device manufacturers such as Depuy, she has failed to raise

10  triable issues of fact regarding Depuy's breach of duty. The court therefore grants Depuy's motion

11  for summary judgment on Kamerik's negligence cause of action.").

12      Accordingly, Defendant is entitled to summary judgment on Plaintiff's cause of action for

13  negligence.

14      **B.    Res Ipsa Loquitur**

15      Plaintiff argues that even if the Court finds it fails to present a triable issue of fact regarding

16  Defendant's breach of the applicable duty of care, a presumption of negligence arises under the

17  doctrine of *res ipsa loquitur*.  (Doc. 25 at 10-12).

18          1.    Governing Authority

19      "In California, the doctrine of res ipsa loquitur is defined by statute as 'a presumption

20  affecting the burden of producing evidence.'"  *United States v. Sierra Pacific Industries*, 879 F.

21  Supp. 2d 1096, 1112 (E.D. Cal. 2012) (citing Cal. Evid. Code § 646, subd. (b)); *see Holmes v.*

22  *Bright Beginnings CDC*, No. EDCV 15-2539-GW(DTBx), 2017 WL 421642, at *3 (C.D. Cal. Jan.

23  30, 2017) ("Res ipsa loquitur is a [California] rule of evidence allowing an inference of negligence

24  from proven facts[.]") (quoting *Gicking v. Kimberlin*, 170 Cal. App. 3d 73, 75 (1985)); *see id.* at

25  *4 ("In 1970, the California legislature enacted [Cal. Evid. Code § 646] which codified the res ipsa

26  loquitur doctrine.").  "Res ipsa loquitur is a form of circumstantial evidence that permits an

27  inference of negligence to be drawn from a set of proven facts."  *Ashland v. Ling-Temco-Vought,*

28  *Inc.*, 711 F.2d 1431, 1437 (9th Cir. 1983) (citing *Wilson v. United States*, 645 F.2d 728, 730 (9th

Cir. 1981)); *see. Sierra Pacific Industries*, 879 F. Supp. 2d at 1112 ("[R]es ipsa loquitur authorizes

an inference of negligence in the absence of a showing to the contrary.") (citing *Roddiscraft, Inc.*

*v. Skelton Logging Co.*, 212 Cal. App. 2d 784, 793 (1963)).

"The traditional elements needed to invoke [res ipsa loquitur] are (1) an injury-producing

event of a kind that ordinarily does not occur in the absence of someone's negligence; (2) the event

must be caused by an agency or instrumentality within the exclusive control of the defendant; (3)

the event must not have been due to any voluntary action or contribution on the part of the plaintiff."

*Id.* (citing *Olsen v. States Line*, 378 F.2d 217, 220 (9th Cir. 1967); W. Prosser, *Law of Torts* § 39

at 214 (4th ed. 1971)); *Sierra Pacific Industries*, 879 F. Supp. 2d at 1112 (citing *Brown v. Poway*

*Unified Sch. Dist.*, 4 Cal. 4th 820, 826 (Cal. 1993)).

"Once the inference attaches, it is the defendant['s] burden to produce evidence that they

were in fact not negligent." *Sierra Pacific Industries*, 879 F. Supp. 2d at 1112 (citing *Brown*, 4

Cal. 4th at 826). "If defendant[] produce[s] such evidence, then "the trier of fact determines

whether defendant[ was] negligent without regard to the presumption, simply by weighing the

evidence." *Id.*

        2.     <u>Analysis</u>

Plaintiff is not entitled to a *res ipsa loquitur* presumption that insulates its negligence claim

from summary judgment.

To begin with, the Court acknowledges Plaintiff's argument that the parties appear to agree

the allegedly defective beams were the result of someone's negligence (Doc. 25 at 10) and that this,

on its face, appears sufficient to satisfy the first prong of the test – that the injury-producing event

is of a kind that ordinarily does not occur in the absence of someone's negligence. However, the

Court also observes that California courts have clarified that *res ipsa loquitur* attaches when, in

light of past experience, it can be said not just that an accident was probably the result of someone's

negligence, but that "the defendant is probably the person responsible." *Brown v. Poway Unified*

*School Dist.*, 4 Cal.4th 820, 824 (1993). In other words, "where it cannot be said that it is more

likely than not that the accident was caused by defendant's negligence, *res ipsa loquitur* is not

applicable." *Fuller v. Sears, Roebuck & Co.*, 136 Cal. App. 3d Supp. 1, 6 (1982) (affirming trial

1    court's entry of judgment on nonsuit).

2         In all events, Plaintiff has not presented evidence sufficient to create a triable issue of fact

3    that the glulam beam failure was caused by an agency or instrumentality within Defendant's

4    "exclusive control."  Even assuming Plaintiff is correct that the element of exclusive control is

5    measured at the time of a defendant's alleged negligent act or omission which caused the accident,

6    rather than actual control at the time of the accident (*see* Doc. 25 at 11-12, citing *Hansen v. Matich*

7    *Corp.*, 234 Cal. App. 2d 129, 232-33 (1965)), a plaintiff seeking to invoke *res ipsa loquitur* must

8    also "prove that the condition of the instrumentality had not been changed after it left the

9    defendant's possession."  *Fuller*, 136 Cal. App. 3d Supp. at 6.  In other words, while "a plaintiff

10   may invoke *res ipsa loquitur* even when the event at issue takes place after the defendant

11   relinquishes control of the instrumentality, such an invocation is possible only if the plaintiff shows

12   that 'the instrumentality had not been improperly handled or its condition otherwise changed after

13   control was relinquished by the defendant.'"  *Puccio v. Standard Ins. Co.*, No. 12–cv–04640–JST,

14   2013 WL 1411155, at *7 (N.D. Cal. Apr. 8, 2013) (quoting *Southern Arizona York Refrigeration*

15   *Co. v. Bush Mfg. Co.*, 331 F.2d 1, 8 (9th Cir. 1964)).

16        The sole case upon which Plaintiff relies (*Hansen*) in support of its argument that Defendant

17   maintained "exclusive control" of the instrumentality at issue involved starkly contrasting facts

18   from those presented here.  In *Hansen*, the plaintiff was injured when her vehicle struck a

19   depression in the road surface that was created by the defendant during its road construction

20   activities over the days leading up to the accident. 234 Cal. App. 2d at 131.  The court rejected the

21   defendant's argument that, given none of its construction crews were present at the time of the

22   accident, a *res ipsa loquitur* presumption was improper because the plaintiff could not establish

23   that the road was in its exclusive control.  The court relied on the fact that, by contract with the

24   state, the roadway remained in the defendant's exclusive control throughout completion of the work

25   project, which extended beyond the time the defendant created the allegedly defective condition

26   (the road depression).  *Id.* at 132.  The court relied on the defendant's duty of care to construct

27   detours and control and reroute traffic while its work was uncompleted and to maintain a condition

28   safe for public travel.  *Id.* at 132-33.

1        The *Hansen* court's treatment and application of *res ipsa loquitur* does not fit the facts of

2    this case.  Whereas the defendant in *Hansen* by contract maintained an ongoing duty of care to keep

3    the road in a safe condition after its creation of the hazard at issue, there is no similar circumstance

4    here.  Moreover, whereas in *Hansen* there was no evidence the instrumentality (the road) ever

5    passed out of the defendant's control to a third-party whose conduct could have amounted to

6    negligence, in stark contrast here, there is a wholly independent instrumentality at issue that never

7    was within Defendant's control (the installation of the glulam beams by Minner Construction).  *See,*

8    *e.g., Davis v. Safeway Stores, Inc.*, 271 Cal. App. 2d 365, 269 (1965) (affirming trial court's refusal

9    to issue *res ipsa loquitur* instruction where "the instrumentality (bottle) was not in the control of

10   [the] defendant when the injury occurred, and the evidence was to the effect that the bottle had been

11   mishandled [by a third-party] after [defendant] had delivered it").  As a California appellate court

12   more recently noted in an unpublished decision, *res ipsa loquitur* cannot be invoked to defeat

13   summary judgment where "common sense" dictates that an actor besides the defendant may have

14   engaged in the conduct resulting in the negligently-inflicted injury, thus undermining any showing

15   that the allegedly negligent defendant had exclusive control of the injury-causing instrumentality.

16   *See Aguilar v. Dignity Health*, No. B313734, 2023 WL 8181249, at *10 (Cal. App. Ct. Nov. 27,

17   2023) (affirming summary judgment and rejecting the plaintiff's reliance on *res ipsa loquitur*

18   because "it is just as likely that a medically untrained relative" negligently inflicted a newborn's

19   injury during a post-delivery visit as it was caused by defendant health care providers, as plaintiff

20   maintained, while they had exclusive control over the newborn during delivery).

21        **C.    Strict Product Liability and Plaintiff's Request for Leave to Amend**

22       Plaintiff contends that, notwithstanding its sole claim in the FAC is denominated as

23   "Negligence" and not strict products liability, "the necessary allegations for strict product liability

24   are nevertheless alleged and there are disputes of fact with respect to the elements of strict products

25   liability."  (Doc. 25 at 12-13).  Plaintiff argues that the evidence shown throughout discovery "is

26   more than sufficient to establish [the claim for strict product liability]."  *Id.* at 13.

27       Plaintiff's argument that the FAC asserts and pleads a strict products liability cause of action

28   is without merit.  As Plaintiff concedes, no strict products liability claim is pleaded and, in fact,

1    neither the term "strict products liability" nor any equivalent term (*i.e.*, "negligence per se") appears

2    anywhere in the FAC.  The sole cause of action is titled "Negligence."  Each of the four substantive

3    paragraphs within the body of the cause of action recite the elements of a cause of action for

4    negligence—duty, breach, causation, and damages.  *See* (Doc. 1 ¶¶ 8-11).

5         Federal Rule of Civil Procedure 8(a)(2) requires that a plaintiff's complaint provide the

6    defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests.  As

7    summarized above, Plaintiff's complaint wholly fails to provide Plaintiff with any such "fair

8    notice" that it sought to proceed on a claim for strict products liability.  Further, the Court discerns

9    nothing else in the record, and Plaintiff proffers no additional information, tending to suggest

10   Plaintiff conveyed to Defendant its intent to seek recovery on a strict products liability theory.  The

11   parties' joint scheduling report makes no mention of strict products liability and the disputed legal

12   issues the parties identify therein pertain only to certain elements of a negligence claim (*e.g.*, duty

13   and breach).  *See* (Doc. 7).  In connection with litigating its non-dispositive motions, Defendant

14   pointed out that Plaintiff's sole cause of action was negligence and sought to exclude Plaintiff's

15   noticed expert because he was not qualified to testify that Defendant acted unreasonably or

16   breached any standard of care owed to Plaintiff.  *See, e.g.* (Doc. 16 at 7) (noting, "[a]s Jasmine has

17   alleged a single cause of action for negligence, it must offer evidence or testimony that the defect

18   in the product was due to negligence of the defendant.") (citation and quotation omitted); *id.* at 8

19   ("none of the other experts proffered by Jasmine are qualified or prepared to opine as to the standard

20   of a reasonably careful manufacturer.") (quotation omitted).  In opposition, Plaintiff did dispute

21   Defendant's assertion that its single pleaded claim seeks recovery for negligence, nor did it clarify

22   that it sought to hold Defendant strictly liable such that the elements of duty and breach were

23   immaterial; instead, it largely defended the admissibility of its expert's testimony on the grounds

24   that the testimony is relevant to the element of causation.  *See generally* (Doc. 17).

25        Notwithstanding the relatedness of strict products liability to traditional negligence,

26   Plaintiff fails to cite any authority for the proposition that, under these circumstances, it may

27   proceed on an un-pleaded cause of action raised for the first time in opposition to Defendant's

28   motion for judgment—long after discovery has closed.  Indeed, the authorities are to the contrary.

1    *E.g., Hasan v. E. Washington State Univ.*, 485 Fed. App'x 169, 171 (9th Cir. 2012) (affirming

2    district court's rejection of the plaintiff's attempt to add a claim not pled in operative complaint

3    that was raised for the first time in opposition to the defendant's motion for summary judgment);

4    *Feezor v. Patterson*, 896 F. Supp. 2d 895, 903 (E.D. Cal. 2012) ("It is axiomatic that violations not

5    pled in the complaint cannot be considered by this court at the summary judgment stage"); *Peralta

6    v. Worthington Indus. Inc.*, No. CV-17-03195-PHX-JJT, 2022 WL 124760, at *3 (D. Az. Jan. 13,

7    2022) (same; rejecting the plaintiff's attempt to seek recovery for strict liability relating to

8    manufacturing defect where no such claim was pleaded in complaint).

9        Seemingly in recognition of the fact that it is doubtful the FAC adequately pleads a cause

10    of action for strict products liability, Plaintiff requests in the alternative leave to amend its FAC to

11    add such a claim. (Doc. 25 at 13-14). "Generally, Federal Rule of Civil Procedure 15(a) liberally

12    allows for amendments to pleadings." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir.

13    2000). However, a district court "should address the issue under Federal Rule of Civil Procedure

14    16 [where] it had filed a pretrial scheduling order that established a timetable for amending the

15    pleadings, and the deadline had expired before [plaintiffs] moved to amend." *Id.*; *e.g., Beech v.

16    San Joaquin Cnty.*, No. 2:15-cv-00268-TLN-CKD, 2019 WL 5566250, at *2 (E.D. Cal. Oct. 29,

17    2019) ("When a court issues a pretrial scheduling order that establishes a timetable to amend the

18    complaint, Rule 16 governs any amendments to the complaint."); *Moriarty v. Cnty. of San Diego*,

19    No. 17-cv-1154-LAB (AGS), 2019 WL 4643602, at *4 (S.D. Cal. Sept. 24, 2019) ("Ordinarily,

20    leave to amend is governed by Fed. R. Civ. P. 15(a)'s standard. Here, however, amendment would

21    also require amending the scheduling order, implicating Fed. R. Civ. P. 16.").

22        Under Federal Rule of Civil Procedure 16(b), a scheduling order "may be modified only

23    for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Rule 16(b)'s 'good cause'

24    standard primarily considers the diligence of the party seeking the amendment." *Johnson v.

25    Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (finding that a belated motion to

26    amend is governed by Rule 16 and not Rule 15(a)). If the moving party is unable to reasonably

27    meet a deadline despite acting diligently, the scheduling order may be modified. *Id.* If, however,

28    the moving party "'was not diligent, the inquiry should end' and the motion to modify should not

23

1  be granted." *Zivkovic v. So. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (quoting

2  *Johnson*, 975 F.2d at 609).

3      Plaintiff filed the operative FAC on March 14, 2024.  (Doc. 1 at 8).  The operative

4  scheduling order—entered in this case on October 24, 2024—set the deadline to amend pleadings

5  as December 23, 2024.  (Doc. 12).  Plaintiff did not seek to amend the operative complaint.  Its

6  failure to seek relief until ten months *after* the deadline to amend pleadings, *after* discovery closed,

7  and *after* summary judgment briefing was ongoing does not demonstrate diligence.  Although

8  Plaintiff fails to acknowledge the governing effect of Rule 16 in arguing that leave to amend is

9  warranted (Doc. 25 at 13-14), it otherwise offers no explanation for the extraordinary delay in

10  seeking to amend the FAC.  *See Johnson*, 975 F.2d at 609;  *e.g., Global Community Monitor v.*

11  *Mammoth Pacific L.P.*, No. 2:14-cv-01612-MCE-KJN, 2016 WL 4247995, at *3 (E.D. Cal. Aug

12  11, 2016) (presumption against finding good cause "when the facts and the theory have been known

13  to the party seeking amendment since the inception of the cause of action") (citing *Coleman*, 232

14  F.3d at 1295).

15      Instead, Plaintiff relies on the command of Rule 15(b) that leave should be freely granted

16  when justice requires and on a single case (*Desertrain v. City of Los Angeles*, 754 F.3d 1147 (9th

17  Cir. 2014) for the same proposition.  But for the reasons set forth above, Rule 15 does not govern

18  here—Rule 16 governs, under which Plaintiff is required to show good cause for not having

19  amended its complaint until long after the deadline expired.  *Coleman*, 232 F.3d at 1294-95.  "Good

20  cause" chiefly requires a showing that the party seeking to amend was diligent in its efforts to do

21  so.  For the reasons already addressed above, Plaintiff fails to satisfy its burden under Rule 16 to

22  show good cause and, thus, leave to amend is not warranted.  *See, e.g., Bullard v. Wastequip Man'fr*

23  *Co. LLC*, No. CV 14-01309 MMM (SSx), 2015 WL 12766467, at *12 (C.D. Cal. Apr. 14, 2015)

24  ("Although Bullard in summary fashion requests leave to amend the second amended complaint to

25  'conform to evidence,' he actually seeks to raise a new theory of liability in response to Defendants'

26  motion for summary judgment. Bullard makes no effort to show that good cause exists to permit

27  an amendment raising a new theory of liability against Wastequip at this stage.") (citing cases).

28  ///

**<u>Conclusion and Order</u>**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's motion for summary judgment (Doc. 24) is **GRANTED**; and

2. The Clerk of the Court is directed to enter judgment in favor of Defendant and to close this case.

IT IS SO ORDERED.

Dated:   **December 23, 2025**

UNITED STATES MAGISTRATE JUDGE